UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Sean Sullivan**

Plaintiff,

– against –

**The City of New York, Hillstone Restaurant Group, Inc., John Doe #1,** a person claiming to be an employee of Hillstone restaurant located at Citicorp Center, **Police Officer Baserap, Police Officer Rittenhouse, Police Officers John Doe # 2, 3 and 4,**

Defendants,

# 17CV 3779

**COMPLAINT**

Civil Action No.:

## I.    Introduction

1.    This is a civil rights action in which the plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York.  Each and all of the various Defendants' acts alleged herein were done by the Defendants, their agents, servants and employees, to the extent applicable, and each of them, under the color and pretense of the statutes, ordinances, regulations, customs and usages of the City of New York and the State of New York, and under the authority of their office as members of the police force of said city.

2.    In all, the various Defendants subjected the Plaintiff to an array of violations of his unmistakable constitutional and legal rights, and the Plaintiff thereby seeks compensatory and punitive damages, declaratory relief, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

## II.    The Parties

3.    Sean Sullivan, the Plaintiff, is an unemployed attorney residing within the jurisdiction of this Court.

4.    Defendant, THE CITY OF NEW YORK ("NYC"), was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the City and/or State of New York.

5.    THE POLICE DEPARTMENT OF THE CITY OF NEW YORK (the "NYPD"), was and still is an agency and/or department and/or entity of NYC duly organized and existing under and by virtue of the laws of the City and/or State of New York.

6.    NYC maintains a police department, namely the NYPD, where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by NYC, and is thereby liable to the Plaintiff for the acts complained of herein under, among others, the theories of vicarious liability and respondeat superior.

7.    The NYPD maintains a police department where personnel, including, its agents, servants and employees, were hired, trained, managed, directed, supervised, and controlled by practice and custom in accordance with certain guidelines and policies, including, without limitation, a Patrol Guide describing proper procedure for police officers when interacting with private citizens.

8.    At all relevant times, the Defendant Hillstone Restaurant Group, Inc, a foreign business corporation based in Phoenix, Arizona and incorporated in Delaware, operated a restaurant called Hillstone located in the Citicorp Center building, the address for which is 153 West 53rd Street in New York, New York.

9.  At all relevant times, the Defendant John Doe #1 held himself out to be an employee of Defendant, Hillstone Restaurant Group, Inc., working at their restaurant located at the Citicorp Center.

10.  At all relevant times, the Defendant Police Officer Baserap held himself out to be an employee of the NYPD acting under the color of law.  The Plaintiff is unable to determine the given name and badge number of this Defendant at this time.  Police Officer Baserap is sued in his individual and official capacities.

11.  At all relevant times, the Defendant Police Officer Rittenhouse held himself out to be an employee of the NYPD acting under the color of law.  The Plaintiff is unable to determine the given name and badge number of this Defendant at this time.  Police Officer Rittenhouse is sued in his individual and official capacities.

12.  At all relevant times, the Defendants John Doe # 2, 3, and 4, held themselves out to be employees of the NYPD acting in the capacity of agents, servants, and employees of defendant NYC.  The Plaintiff is unable to determine the names and badge numbers of these Defendants at this time and thus sues them under a fictitious designation.  John Doe # 2, 3 and 4 are sued in their individual and official capacities.

13.  At all times relevant herein, the named individual defendants and the unnamed John Doe defendants (collectively, the "Defendants") were acting under color of law as agents, servants, employees and officers of the NYPD or at the direction of or in conspiracy with the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their professional functions in the course of their duties.  Police Officer Baserap, Police Officer Rittenhouse, and John Doe # 2, 3, and 4 are collectively referred to herein as the "Police Officer Defendants."

3

14.    On or about August 2, 2016, a Notice of Claim regarding the claims set forth herein was duly served on the New York City Comptroller's Office by personal delivery; and more than thirty (30) days have elapsed since the presentation of the aforesaid demand and claim, and Defendant NYC and the Comptroller thereof, have refused to make an adjustment for payment thereof, and this action was commenced within one (1) year and ninety (90) days and/or one (1) year after the cause(s) of action accrued, in accordance with the provisions of Section 504 of the General Municipal Law,  and all relevant sections of law applicable hereto.

15.    The Defendants' acts hereafter complained of were not objectively reasonable, and were carried out intentionally, recklessly, with malice and/or gross disregard for the Plaintiffs' rights.

16.    The limitations on liability set forth in CPLR 1601 do not apply to this action.

17.    The limitation in liability set forth in CPLR 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR 1602.


## III.    The Basis for Jurisdiction


18.    This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343.  This Court also has supplemental jurisdiction over the claims for relief arising under New York statutory and common law pursuant to 28 U.S.C. § 1376(a) because they form part of the same controversy and derive from the same facts.

19.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution, as well as New York State statutory and common law.

20.    Venue is proper pursuant to 28 U.S.C. §1391(b) in that the Plaintiff has been residing in this district and the Defendants are subject to personal jurisdiction in the Southern District of New York.

## IV.    The Facts

21.    On May 21, 2016, the Plaintiff visited a Barnes & Noble bookstore, then located in the Citicorp Center building on Third Avenue and 54th Street in Manhattan. On that afternoon, the Plaintiff first browsed the store's magazine stand and then made his way over to the café located in the bookstore in order to read and complete certain personal projects.   Less than one-hour after the Plaintiff sat at a table in the cafe alone, a stranger wearing the apparel of a restaurant kitchen employee approached the Plaintiff at his table.   This stranger, Defendant John Doe # 1, asked the Plaintiff if he had just left a bag in a restaurant located in the basement of the Citicorp Center named Hillstone.   The Plaintiff told John Doe # 1 that that was impossible as he had never been in that restaurant before and not to disturb him further.   John Doe #1 expressed skepticism of the Plaintiff's reply, suggesting that the Plaintiff follow him to take a look, but the Plaintiff insisted that he did not wish to be disturbed and John Doe # 1 eventually left the Plaintiff alone at his table in the café.

22.    No more than fifteen minutes later, a team of employees of the NYPD, including certain of the Police Officer Defendants, approached the Plaintiff while he sat in the cafe and

asked him to go with them as they wanted to discuss something. The Plaintiff indicated that he did not wish to be disturbed but these police officers would not take no for an answer and indicated that the Plaintiff needed to leave with them immediately or else. In the lobby of the Citicorp Center leading to the Barnes and Noble's 3rd Avenue entrance (which also served as an entrance to Hillstone restaurant), some of the Police Officer Defendants stated to the Plaintiff that they are investigating a crime that occurred at Hillstone restaurant and that he needed to tell them what the Plaintiff knew about it. The Plaintiff stated clearly to them that he knew nothing about the events they described because he had never been to that restaurant and especially not on the day in question.

23. One of the police officers, upon information and belief, Police Officer Baserap, then stated that the Plaintiff was lying. As the back and forth with the Police Office Defendants continued, Police Officer Baserap eventually made the claim that the Plaintiff was a "suspect" of the "crime" they were investigating, that there were witnesses who identified the Plaintiff, that there was video footage of the Plaintiff committing the crime, and that the Plaintiff needed to confess. The Plaintiff reiterated to the Police Officer Defendants in no uncertain terms that he has no idea what they were talking about and that they should leave him alone as he has committed no crime. The Police Officer Defendants continued to berate the Plaintiff, proceeded to handcuff the Plaintiff, and detained him at the entrance of the Barnes and Noble as some of their colleagues appeared to be engaging in some police activity in the Hillstone restaurant.

24. On that busy Saturday afternoon, the Police Officer Defendants held the Plaintiff handcuffed at this place of business while large crowds of people floated about shopping and dining. The Police Officer Defendants further refused to explain to the Plaintiff the details of the "crime" he was accused of (the Plaintiff over-hearing some discussion of an assault on a

6

customer), at what point and by whom the Plaintiff was identified as the perpetrator of this crime, or the role played by John Doe # 1 in all of this, as he initially approached the Plaintiff as a Good Samaritan looking to help the Plaintiff as a purported customer of Hillstone who misplaced an item there, whereas the Police Officer Defendants suddenly insisted the Plaintiff was a "suspect" subject to arrest and prosecution.

25. The Police Officer Defendants held the Plaintiff for so long while they purportedly investigated this "crime" that one Police Officer, Defendant Police Officer Baserap, insisted that the Plaintiff move to a corner of the entryway to avoid the crowds and demanded that the Plaintiff sit on the ground. The Plaintiff hands were handcuffed so tight behind his back that abrasions were forming on his wrists which prevented him from being able to move his body and he thereby could not physically comply with the demand that he sit on the floor.  When he tried to explain this to the Police Officers, one or more of the Police Officer Defendants tripped his legs from under him, all while the Plaintiff was handcuffed, and forced him violently to the floor.

26. The Police Officer Defendants continued to detain the Plaintiff in this outrageous manner even though it was clear that they lacked reasonable suspicion or probable cause to detain the Plaintiff at the time.  Furthermore, there was no threat or danger of the Plaintiff leaving the cafe if they had simply asked him to remain where he was earlier, but they instead insisted on humiliating the Plaintiff and creating a pointless public spectacle of a the Plaintiff manacled and held down in a public venue.  Nevertheless, the Plaintiff insisted to the Police Officer Defendants that a quick examination of any security camera footage would show that the Plaintiff was nowhere near this Hillstone restaurant when the "crime" supposedly occurred and the Plaintiff, besides, was weighed down by heavy bags containing clothes and papers weighing forty pounds or more,  and could not possibly be confused for anyone else at that time.  Upon

7

information and belief, the Plaintiff was the only black male sitting in the Barnes and Noble cafe at the time the Police Officer Defendants approached him.

27.  Over the course of this detention, certain of the Police Officer Defendants, likely Police Officers Rittenhouse and Baserap, searched the Plaintiff's person and duffel bag and backpack without the Plaintiff's consent and even though such search was not incident to the Plaintiff's detention.  The Plaintiff being homeless at the time, substantially all of the Plaintiff's property was located in the Plaintiff's duffel bag and backpack and yet the Police Officer Defendants rummaged through the Plaintiff's bags and inspected his belongings for no valid purpose but presumably to embarrass the Plaintiff, leaving his clothes and papers in a pile for him to re-pack when this ordeal was over.  The Police Officer Defendants did not ask for and did not receive consent from the Plaintiff to inspect and search his bags or his person but engaged in these searches willy nilly in contravention of their Patrol Guide.

28.  Upon information and belief, the Plaintiff was held by the Police Officer Defendants for upwards of an hour but he Plaintiff could not be sure, as he was traumatized at the time.  The Plaintiff was never read his Miranda rights, he was never told clearly what "crime" he was being held for, none of the Police Officer Defendants clearly identified themselves to the Plaintiff, and he was told conflicting stories by the Police Officer Defendants of being both a "witness" and a "suspect."  Presumably, the Plaintiff was fraudulently lured into the entryway of Barnes and Noble and Hillstone restaurant by John Doe #1 and the Police Officer Defendants so that he could be detained without reasonable suspicion and to create a public spectacle so that the Police Officer Defendants could appear as to be in control of a dangerous situation that did not exist in reality and was concocted by them arbitrarily, all at the expense of the Plaintiff's time, physical and mental health, and reputation.

8

29. The Plaintiff was severely traumatized by this event, as he was forcibly restrained by a team of Police Officers in a public setting over an extended period of time without being given a legitimate reason for such action. And given that the Plaintiff had sued NYPD personnel in the past for alleged misconduct, the Plaintiff could not rule out that he was being arbitrarily targeted in retaliation for his past lawsuits against the NYPD. Pertinently, the Plaintiff has also been experiencing an extended unemployment period, and has been understandably concerned and anxious how this public attack on his person would be perceived by others as he tries to get his career going again. Most importantly, the Plaintiff has been involved in a drawn-out divorce where his ex-spouse has put up significant resistance with respect to the custody of the Plaintiff's daughter, and the Plaintiff could not rule out that his ex-spouse would use this unprovoked and illegitimate police attack against him in a child custody proceeding, as she has brought to the attention of that court past encounters the Plaintiff had with law enforcement even though the Plaintiff was not charged with a crime in those instances.

30. Ultimately, the Police Officer Defendants released the Plaintiff without genuine explanation and most of them departed the Citicorp Center building. The Plaintiff then went to the Hillstone restaurant to see if there was still a disturbance there. He could not locate John Doe #1 but he asked a hostess at the door whether a crime was committed earlier in the restaurant and she told the Plaintiff that she was unaware of any crime. Confused by her lack of awareness, the Plaintiff walked two blocks to the local precinct, the 17th Precinct, and asked a police officer at a desk within the precinct whether she was aware of a crime scene at Hillstone restaurant. The Police Officer told the Plaintiff that she was unaware of any criminal activity at Hillstone restaurant that day. Not seeing any of the Police Officer Defendants at the 17th Precinct, the Plaintiff left the area to address his injuries and get himself together.

## V.     The NYPD's Pattern and Practices of Targeting Minorities Without Reasonable Suspicion

31.  In August 2013, a federal judge in Manhattan ruled in a class action brought by minority New Yorkers accosted by police officers pursuant to the NYPD's stop and frisk policy that the NYPD has systematically violated the constitutional rights of minorities over a period of years.  Pursuant to court orders and implementation agreements between NYC and those plaintiffs, an independent monitor was designated to oversee NYPD reforms to avoid the continuing violation of the constitutional rights of New Yorkers.  According to a report issued to the federal court by the NYPD monitor last year, "The NYPD has acknowledged that undocumented Level 3 Terry stops are a serious issue that needs to be addressed."  The monitor's report further states, "The court orders and the parties' agreements require that the NYPD develop and implement a new stop report form to be used by officers every time a person is stopped.  In March 2016, the monitor submitted and the court approved the NYPD's new stop report form."

32.  In her landmark decision, the federal judge noted that in 4.4 million police stops analyzed over an eight year period, over 80% of such stops involved blacks and Hispanics. Notably, the court found, "Blacks and Hispanics are more likely than whites to be stopped within precincts and census tracts, even after controlling for other relevant variables. This is so even in areas with low crime rates, racially heterogenous populations, or predominately white populations."  The federal court further noted in its decision that the NYPD's patterns and practices "lead[s] NYPD officers to stop blacks and Hispanics who would not have been stopped if they were white."  With respect to the NYPD's internal procedures in place to prevent police

officers' unconstitutional conduct, the federal court was especially critical: "In sum, neither the NYPD's review of stop documentation nor its supervision of officers provides an adequate mechanism for identifying unconstitutional stops. Consequently, the NYPD is unable to hold officers accountable for those stops or prevent them from happening in the future."

33.    The New York Civil Liberties Union noted in a November 2013 report that the NYPD's aggressive practices that encroach on the constitutional rights of minorities may not lead to incarceration for these victims but "they do impose significant collateral consequences, including financial burdens and hurdles to employment, childcare, education and housing." Even though a monitor has been appointed to ensure that the NYPD reforms its practices, as noted above, this selfsame monitor has told the federal court in as late as November 2016 that the NYPD has been slow to reform its pattern and practices.  According to the NYPD monitor, "Still on the to-do list, the Department has not yet started in-service training on stop and frisk for all its members on patrol. Nor is there a plan yet for evaluating the courses and the instructors".

34.    Given the slowness with which NYC has taken action to implement the reforms required of the NYPD by a federal court according to the NYPD's court-appointed monitor, and the NYPD's continual custom and practice of violating the constitutional rights of a vulnerable section of the city's population, this Court can conclude that NYC has a de facto municipal policy of trampling on the constitutional rights of certain arrestees detained without reasonable suspicion by officers of the NYPD, as the Plaintiff was so outrageously detained by the Police Officer Defendants.  At the very least, in light of the extensive litigation NYC has lost with respect to the unconstitutional practices of the NYPD over the past five years, NYC's lack of implementation of court-mandated reforms is evidence, in addition to other factors, of its deliberate indifference to the continuing unconstitutional misconduct of the NYPD.

11

## VI.    Statement of Claims

## AS AND FOR A FIRST CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 BECAUSE OF THE DEPRIVATION OF THE PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION

35. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 34 above with the same force and effect as if more fully set forth at length herein.

36. By the acts alleged herein, the Defendants Police Officer Baserap, Police Officer Rittenhouse, and the Police Officers John Doe # 2, 3, and 4, acting under color of law, and in their individual and official capacities, have deprived the Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in particular his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including but not limited to, his right to be free from the nonconsensual seizure of his person by a law enforcement officer without probable cause or reasonable suspicion that the Plaintiff was a suspect in a crime.

37. The above-named Police Officer Defendants, not having a warrant to arrest the Plaintiff or reasonable suspicion that the Plaintiff was involved in a crime on that day, knew that the Plaintiff was innocent of any crime when they detained, held him down, handcuffed, and restrained the Plaintiff in an outrageous manner in a public space in order to appear superficially to be aggressively doing their jobs and to embarrass the Plaintiff in public for their own selfish purposes inconsistent with their duties as public servants.

38.  The Defendant NYC is directly liable for the actions of its employees, including the above-named individual Defendants, agents and/or servants for such conduct committed as part of their employment, and NYC is liable to the Plaintiff for the harms exacted on the Plaintiff due to the customs and policies furthered by the Police Officer Defendants as alleged above.

39.  None of the Police Officer Defendants referred to herein are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

40.  As a direct and proximate result of the unconstitutional acts of the employees of the Police Officer Defendants referred to above, the Plaintiff was discredited in the minds of many members of the community, and has suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE UNREASONABLE SEARCH AND SEIZURE OF THE PLAINTIFF'S PERSON AND PROPERTY

41.    That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 40 above with the same force and effect as if more fully set forth at length herein.

42.  On the date of the incident, certain of the Police Officer Defendants, particularly Police Officers Baserap and Rittenhouse, took various actions in furtherance of the deliberate and unconstitutional search of the Plaintiff and his property without legal justification.  The

Police Officer Defendants failed to advise the Plaintiff of his rights to refuse the search of his property but instead, contrary to applicable law and relevant NYPD regulations, they inspected, examined, searched and held out in public view substantially all of the Plaintiff's property for no apparent reason but to embarrass and humiliate the Plaintiff in public.

43. The Police Officer Defendants, not having a search warrant permitting them to search the Plaintiff or his property, did not offer the Plaintiff a "Contact Card" as required by NYPD departmental regulations if a consent to search is given by a private citizen, as the Plaintiff did not in fact or implicitly consent to a search of his property; and the Police Officer Defendants did not offer the Plaintiff a "Consent to Search" form to sign in accordance with NYPD regulations for a search without a warrant; though the Plaintiff would not have signed such a form even if it were offered because the Plaintiff did not consent to the Police Officer Defendants' searching and rummaging through his duffel bag, backpack and other property on the day of the incident (as he did not believe that they had a legitimate reason for doing so).

44. None of the individual Police Officer Defendants are entitled to either absolute or qualified immunity for their unconstitutional search and seizure described herein because, among other reasons, their actions were not objectively reasonable, but was reckless, malicious and intentional.

45. The Defendant NYC is directly liable for the actions of its employees, including the above-named Defendant employees, agents and/or servants for conduct committed within the scope of their employment, and it is liable to the Plaintiff for the harms exacted on the Plaintiff due to the customs and policies furthered by the police officers to unlawfully detain certain

groups of New Yorkers as alleged above, and to unconstitutionally search and seize the person and property of certain types of New Yorkers without legal justification.

46. By reason of the aforesaid, the Plaintiff's freedom was restricted, he was subjected to great indignity, humiliation, injury to personal and business reputation, serious pain and great distress of mind and body.

## AS AND FOR A THIRD CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE USE OF EXCESSIVE FORCE AND THE FALSE IMPRISONMENT OF THE PLAINTIFF AND MUNICIPAL LIABILITY UNDER MONELL

47. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 46 above with the same force and effect as if more fully set forth at length herein.

48. The Defendants  Police Officer Baserap, Rittenhouse and John Doe # 2, 3, and 4, acting under color of state law, in their individual and official capacities, detained the Plaintiff without reasonable suspicion or a legitimate purpose and used excessive, gratuitous and unconscionable force to handcuff and hold down the Plaintiff contrary to applicable NYPD guidelines, and the Police Officer Defendants should have known that an the Plaintiff did not present a clear and present danger at the time nor did he give any indication that he would flee the premises during their purported "investigation."

49. Upon information and belief, police officers of reasonable competence would have sought more information and more creditable evidence before detaining the Plaintiff without

reasonable suspicion or probable cause for an arrest, and to the extent that the Police Officer Defendants needed the Plaintiff as a "witness," competent police officers would not have lied to him about their purposes and subjected him to a painful and outrageous public spectacle to ensure his availability as a witness. Furthermore, in contravention of the NYC Police Department's Patrol Guide, upon information and belief, the Police Officer Defendants failed to prepare a "Stop Report" as is required for this sort of police encounter, and there appears to be cause to believe that they failed to prepare such a report to hide their unconstitutional misconduct. As described herein, the Police Officer Defendants willfully ignored the requirements of their own employer's Patrol Guide in order to give the impression of aggressive policing when they were creating an artificial spectacle for show at the Plaintiff's expense.

50. The Police Officer Defendants, acting under color of law, in their individual and official capacities, detained and imprisoned the Plaintiff without sufficient legal justification for an arrest, and engaged in excessive force in restraining the Plaintiff, in violation of the Plaintiff's Fourth Amendment rights under the United States Constitution.

51. The Plaintiff was falsely imprisoned and remained imprisoned while being handcuffed and surrounded by a team of Police Officers because the Plaintiff lacked the ability or option to go free on his own recognizances during his detention by the Police Officer Defendants at the Citicorp Center.

52. The Police Officers Defendants intended to have the Plaintiff confined and imprisoned; the Plaintiff was conscious of the confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

53.    The unconstitutional acts described herein of the Police Officer Defendants, acting on behalf of the Defendant NYC, was a last partially caused by a municipal policy of stopping and detaining citizens of New York City for no other reason than their racial and financial background,  as demonstrated in various recent cases and consent decrees; and employees of the NYPD  have consistently taken constitutionally infirm enforcement actions against minorities and the poor by arresting, searching, detaining, and using excessive force against many of such individuals without probable cause or reasonable suspicion of a crime committed by such persons,  as the Plaintiff was arrested and detained in the Citigroup Center; and NYC failed to train its police officers to respect the constitutional rights of vulnerable black and poor New Yorkers like the Plaintiff; and have been deliberately indifferent to the pattern and practice of unconstitutional acts by policemen as described herein.

54.    Moreover, NYC had a policy and custom to accost and detain minority men without reasonable suspicion and in violation of the Constitutional rights of these citizens; and NYC was deliberately indifferent to the Plaintiff's constitutional rights by failing to train and supervise employees of the NYPD in accordance with an implementation agreement of a federal court, and such deliberate indifference and failure to train and supervise are reflective of a policy and/or custom of NYC due to the city's historical policy of targeting and detaining certain groups of New Yorkers for periods of time without legal justification, as abundantly reported in newspapers and other media, and found in a landmark decision of a federal court in November 2013.  Furthermore, it was the policy and/or custom of NYC to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct, including those alleged herein, were instead tolerated by NYC, making causes of action such as this one essential to holding employees of the NYPD accountable for unconstitutional misconduct.

55.  None of the Police Officer Defendants are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

56.  As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation, damage to reputation and mental anguish.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO A CONSPIRACY TO DENY PLAINTIFF'S RIGHTS UNDER U.S. CONSTITUTION

57. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 56 above with the same force and effect as if more fully set forth at length herein.

58. Upon information and belief, certain of the Police Officer Defendants enlisted John Doe #1, an employee of Hillstone Restaurant Group, Inc., to approach, deceive and lure the Plaintiff out of the Barnes and Noble café under false pretenses so that the Police Officer Defendants could falsely accuse, arrest and imprison the Plaintiff without reasonable suspicion in the entryway of the Citicorp Center and create a public spectacle that amounted to an abuse of power and conspiracy to humiliate and demean the Plaintiff.  Furthermore, as described herein, certain of the Police Officer Defendants took steps to cover-up their unconstitutional and

illegitimate misconduct on that day and had John Doe # 1 disappear from the area when the Plaintiff tried to discover what occurred at Hillstone restaurant after his release.

59. Upon information and belief, John Doe #1, an employee of Defendant The Hillstone Restaurant Group, Inc., acting under the color of law and in his capacity as an employee of Hillstone, made arrangements with the Police Officer Defendants to create conditions such that the Plaintiff was falsely imprisoned, detained and searched without reasonable suspicion or probable cause, and worked consciously with the Police Officer Defendants to cover up their unconstitutional misconduct to the Plaintiff's detriment in order to avoid being held accountable for their misconduct.  In accomplishing these acts, the Defendants acted with a knowing, wanton, malicious, unlawful, unreasonable, unconscionable, and flagrant disregard of the Plaintiff's lawful rights, privileges, welfare, and well-being, and are guilty of gross and egregious misconduct toward the Plaintiff.

60. The Police Officer Defendants and John Doe #1, jointly and severally, maliciously and deliberately provided false and/or incomplete information to the Plaintiff and members of the public in order to create the false impression to employees of Hillstone and Barnes and Noble, as well as other members of the public at the Citicorp Center that day, that they were handling a dangerous situation, when the Plaintiff was reading alone in a bookstore cafe by himself without bothering anyone else and without engaging in any acts to disturb members of the public on the day of this incident.

61.  None of the Defendants are entitled to either absolute or qualified immunity for these acts because, among other reasons, these actions were not objectively reasonable but were reckless, malicious and intentional.

62. As a direct and proximate result of the misconduct described above, the Plaintiff has suffered injury and damages including, inter alia, physical and mental pain, suffering and mental anguish, loss of income, injury to reputation, and humiliation and embarrassment.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 FOR FAILURE TO INTERVENE

63. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 62 above with the same force and effect as if more fully set forth at length herein.

64. Defendants John Doe #2, 3 and 4 had ample opportunity to intervene in accordance with their professional responsibility as police officers of the City of New York to prevent Police Officer Baserap and Rittenhouse, as well as their other colleagues, from falsely imprisoning the Plaintiff, from using excessive force in falsely detaining the Plaintiff, and from engaging in unreasonable and unconstitutional searches of the Plaintiff's person and property, but in consequence of their intentional conduct and/or reckless indifference to the harms perpetrated against and attempted against the Plaintiff, John Doe #2, 3, and 4 furthered the violation of the Plaintiff's constitutional rights from being falsely imprisoned, from unreasonable searches and seizures without a warrant, and from having excessive force used against him by a law enforcement officers.

65. Ultimately, none of the Police Officer Defendants chose to exercise their discretion in preventing their fellow officers from violating the constitutional rights of the Plaintiff and

engaging in activity contrary to the NYPD's Patrol Guide, all the while shielding John Doe # 1 and their fellow police officers from the Plaintiff's inquiries upon his shock at these series of events.

66. None of the Defendants are entitled to absolute or qualified immunity for these acts because the Defendants acts in turn were not objectively reasonable but were reckless, intentional and malicious.

67. By reason of John Doe's #2, 3 and 4 failure to intervene and prevent the violation of the Plaintiff's constitutional rights, the Plaintiff was subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal reputation, and great distress.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR FALSE ARREST UNDER APPLICABLE NEW YORK LAW

68.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 67 above with the same force and effect as if more fully set forth at length herein.

69.     Beginning on or about the afternoon of the date of incident at the Citicorp Center, the Police Officers, assisted by John Doe #1, proceeded to detain and arrest the Plaintiff without a warrant, authority of law, reasonable suspicion or probable cause.

70. The arrest of the Plaintiff described herein was effectuated without any warrant or other legal process and without authority of the law and without any reasonable grounds, or

cause to believe that the Plaintiff was guilty of any crimes, or was in the process of committing any crimes.

71.  The Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his arrest by the Police Officers and was forced to submit to the aforesaid arrest entirely against his will.

72.  The Police Officer Defendants, as set forth above, intended to arrest and confine the Plaintiff; the Plaintiff was conscious of the arrest and confinement, the Plaintiff did not consent to the arrest and confinement; and the arrest and subsequent confinement were not otherwise privileged.

73.  The Defendants NYC and Hillstone Restaurant Group, Inc., is liable for the tortious false arrest of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

74.  By reason of the aforesaid false arrest and detention of the Plaintiff, he was imprisoned and subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal and business reputation, legal expenses, disruption of life, and great distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR FALSE IMPRISONMENT UNDER APPLICABLE NEW YORK LAW

75.  The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 74 above with the same force and effect as if more fully set forth at length herein.

76. The Police Officer Defendants intentionally handcuffed and imprisoned the Plaintiff on May 21, 2016, without any just cause or probable cause, and held him against his will until he was released later that afternoon without a reasonable explanation of the conduct of the Police Officer Defendants and John Doe #1.

77. The Plaintiff was falsely imprisoned and remained imprisoned over an extended period of time on the afternoon of May 21, 2016.

78. Said imprisonment was effectuated without any warrant or other legal process and without authority of the law and without any reasonable grounds, or cause to believe that the Plaintiff was guilty of any crimes, or that the Defendants had just cause or a lawful reason to imprison the Plaintiff.

79. The Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his imprisonment by the individual Defendants and was forced to submit to the aforesaid imprisonment entirely against his will.

80. The individual Defendants intended to have the Plaintiff confined; the Plaintiff was conscious of the confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

81. The Defendants NYC and Hillstone Restaurant Group, Inc, are liable for the tortious false imprisonment of the Plaintiff based upon the theories of respondeat superior and vicarious liability.

82.  By reason of the aforesaid false imprisonment and detention of the Plaintiff, his freedom was restricted, he was subjected to great indignity, humiliation, loss of economic and income opportunity, serious pain and great distress of mind and body.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR FRAUD AND CONSPIRACY UNDER APPLICABLE NEW YORK LAW

83.    That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 82 above with the same force and effect as if more fully set forth at length herein.

84.  By the conduct and actions described above, the Police Officer Defendants and John Doe # 1 conspired to lure the Plaintiff out of the Barnes and Noble café under false pretenses and fraudulently bring to bear the resources of the NYPD to create a public spectacle for no legitimate purpose but instead to humiliate the Plaintiff in public.  Said individual Defendants did not possess legitimate charges against the Plaintiff,  but still falsely imprisoned the Plaintiff, using excessive force and subjected the Plaintiff to gratuitous and unreasonable searches in the middle of a busy public venue for the purpose of willfully and intentionally inflicting harm, pain and suffering upon the Plaintiff.

85. The purpose of handcuffing and detaining the Plaintiff was illegitimate intent to harm the Plaintiff without economic or social excuse or justification, which was outside the legitimate ends of law enforcement. The acts and conduct of the Police Officers were the direct and proximate cause of significant injury and damage to the Plaintiff and violated his statutory

and common law rights as guaranteed by the laws and Constitution of the United States of America and the State of New York.

86.  The Defendants, jointly and severally, their agents, servants, and/or employees failed to take reasonable steps to stop the tortious and unconstitutional acts committed against the Plaintiff and instead maliciously and deliberately aided and abetted such misconduct.

87.   The Defendants NYC and Hillstone Restaurant Group, Inc, are liable for the tortious acts committed against the Plaintiff by the Defendants based upon the theories of respondeat superior and vicarious liability.

88.  The Police Officer Defendants and John Doe #1 acted with intentional, knowing, callous, and/or reckless indifference to the Plaintiff's rights by engaging in the acts described herein constituting a fraud and conspiracy.

89.  By reason of the aforesaid, the Plaintiff was injured in mind and body, suffered injury to personal and business reputation, and loss of income and economic opportunity.


## AS AND FOR A NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER APPLICABLE NEW YORK LAW


90.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 89 above with the same force and effect as if more fully set forth at length herein.

91.   The individual Police Officer Defendant and John Doe #1 acted in a manner that exceeded all reasonable bounds of decency with an intent to inflict emotional distress upon the Plaintiff since the Plaintiff would likely had been shocked by the incidents of his arrest and imprisonment and, upon information and belief, a desire to embarrass him in public for no legitimate reason, and subject him to further humiliation.

92.   Upon information and belief, the individual Police Officer Defendants and John Doe #1 did purposely, deliberately, intentionally, recklessly, wantonly, with malice, harass, annoy, humiliate and embarrass the Plaintiff, to interfere with and deprive the Plaintiff of the right to be at liberty, and deliberately to cause him to be humiliated in a pubic venue

93. The individual Defendants did abuse and violate their own guidelines and rules and regulations in a deliberate attempt to imprison Plaintiff and subject him to an illegitimate spectacle that was unjustified by any lawful authority or reasonable law enforcement necessity.

94.   The Defendants NYC and Hillstone Restaurant Group, Inc. are liable for the tortious and intentional infliction of emotional distress against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

95.   By reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, indignity and great emotional distress.

## AS AND FOR A TENTH CAUSE OF ACTION FOR NEGLIGENCE AND FAILURE TO TRAIN UNDER APPLICABLE NEW YORK LAW

96.  The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 95 above with the same force and effect as if more fully set forth at length herein.

97.  The Defendants NYC and Hillstone Restaurant Group, Inc., and their agents, servants and employees, carelessly and recklessly failed to properly train and supervise their employees, in that they failed to train their employees to refrain from deceiving the public for illegitimate purposes and exercise the proper deportment and temperament; and to otherwise act as reasonable, prudent employees; failed to give them proper instruction as to their deportment, behavior and conduct as representatives of their employer; and, in that the Defendants, their agents, servants and employees were otherwise reckless, careless and negligent in their conduct at the Plaintiff's expense on the date of this incident.

98.  The Defendants, its agents, servants and employees negligently, carelessly and recklessly performed their duties in that they failed to use such care in the performance of their police duties as a reasonably prudent and careful police officer would have used under similar circumstances; in that John Doe # 1 was negligent in assisting the Police Officer Defendants in deceiving the Plaintiff for no lawful purpose and using his position as an employee of Hillstone Restaurant Group, Inc. to establish trust with the Plaintiff in acting under false pretenses on behalf of the Police Officer Defendants; in that the Police Officer Defendants carelessly, recklessly and negligently arrested the Plaintiff without making a proper investigation; in that they were negligent, careless and reckless in the manner in which they operated, controlled and

maintained their agents, servants, and employees; violating established rules, procedures and policies, and in that the Defendants, their agents, employees and servants were otherwise negligent, careless, and reckless.

99.  The aforesaid occurrence, to wit the false arrest. false imprisonment, excessive force, unlawful search and seizure and negligence in training personnel resulting in injuries therefrom, were caused wholly and solely by reason of the negligence of the Defendants NYC and Hillstone Restaurant Group, Inc, their agents, servants and employees without any negligence on the part of the Plaintiff.  Hillstone Restaurant Group, Inc. is liable for the tortious and negligent acts of its employees, including without limitation, John Doe #1. John Doe #1 was acting within the course and scope of his employment with Hillstone Restaurant Group, Inc., when he engaged in the wrongful conduct described herein.

100.  As a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and loss of personal and business income, and the Plaintiff has been otherwise damaged because of the unlawful detention of the Plaintiff and otherwise.

## AS AND FOR A ELEVENTH CAUSE OF ACTION FOR THE VIOLATION OF THE NEW YORK STATE CONSTITUTION

101.  The Plaintiff repeats and re-alleges paragraphs 1 through 100 as if fully set forth herein.

102.  The Defendants subjected the Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving the Plaintiff of rights, privileges, and immunities secured

by Article 1, §§ 11 and 12 of the New York State Constitution, including, without limitation, the following deprivations of his rights, privileges, and immunities:

        i. The Plaintiff was deprived of his right to equal protection under the law and was subjected to discrimination based on his race as described above, in violation of New York State Constitution Article 1, § 11;  and

        ii.   The Plaintiff was deprived of his right to be free from unreasonable searches and seizures as described above, in violation of New York State Constitution Article 1, § 12.

    103.   As a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers great mental pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and loss of personal and business income, and the Plaintiff has been otherwise damaged.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

    104.   The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 103 above with the same force and effect as if more fully set forth at length herein.

105.  The Defendants have violated important public policy interests in the maintenance of the integrity of law enforcement activity and the preservation of the rule of law, and in misusing the trust bestowed on civil service employees acting in the public interest.

106.  It is necessary to punish the Defendants for such egregious conduct and to deter the Defendants and any other law enforcement personnel, and those acting at their direction under the color of law, who might consider similar conduct in the future.

107.  Accordingly, punitive damages should be awarded against the Defendants, including NYC and the Hillstone Restaurant Group, Inc. for the misconduct described herein.

## VII.    Relief Sought

WHEREFORE, the Plaintiff respectfully requests that this Court:

1.  Declare that the Defendants' conduct alleged herein violated the Plaintiff's rights pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and the New York State Constitution and state common and statutory law in the manner alleged herein, upon the evidence adduced at trial or otherwise;

2.  Award the Plaintiff damages in an amount of no less than $4,000,000;

3.  Award the Plaintiff punitive damages in a yet undetermined amount for the Defendants' willful and malicious violations of the Plaintiff's rights;

30

4.  Award the Plaintiff reasonable attorneys' fees and costs as authorized under 42

   U.S.C. § 1988; and

5.  Grant such other further and different relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 16th day of May, 2017.

_____

Signature of Plaintiff

General Delivery
New York, New York 10001-9999
Sullivan9499@gmail.com
(929) 252-0532

31

Sean Sullivan
General Delivery
New York, New York 10001



RECEIVED
SDNY DOCKET UNIT
2017 MAY 18 PM 3:46

Pro Se Office / Intake Unit
United States District Court,
    Southern District of New York
Daniel Patrick Moynihan
    U.S. Courthouse
500 Pearl Street
New York, New York 10007

